**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAROL M. MCDONOUGH, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TOYS "R" US, INC., d/b/a Babies "R" Us, *et al.*, <br> Defendants. | No. 2:06-cv-0242-AB |
| ARIEL ELLIOTT, *et al.,* <br><br> Plaintiffs, <br><br> v. <br><br> TOYS "R" US, INC., d/b/a Babies "R" Us, *et al.*, <br> Defendants. | No. 2:09-cv-06151-AB |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, FOR CERTIFICATION OF SETTLEMENT CLASSES AND FOR PERMISSION TO DISSEMINATE CLASS NOTICE**

### TABLE OF CONTENTS

I.  OVERVIEW ...................................................................................................1

II.  BACKGROUND ...........................................................................................2

    A.  Background of the Litigation.................................................................2

III.  HISTORY OF SETTLEMENT NEGOTIATIONS .......................................3

IV.  MATERIAL TERMS OF PROPOSED AMENDED SETTLEMENT............4

    A.  Class Benefits .......................................................................................4

    B.  Class Notice ..........................................................................................6

    C.  Plaintiffs' Incentive Awards and Attorneys' Fees .................................7

V.  ARGUMENT ................................................................................................8

    A.  Preliminary Approval Of The Proposed Settlement Is Appropriate......8

        1.  Overview of the Class Settlement Approval Process .................8

        2.  A Review of the Applicable Factors Favors Approval of the
            Settlement .............................................................................10

VI.  THE PROPOSED SETTLEMENT SUBCLASSES SHOULD BE CERTIFIED FOR
     SETTLEMENT PURPOSES ........................................................................12

    A.  The Proposed Settlement Subclasses Meet The Requirements Under
        *Amchem* For Certification of A Settlement Class.................................12

VII.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND
      METHOD OF CLASS NOTICE.................................................................14

    A.  The Proposed Class Notice Provides for the Best Notice Practicable
        Under the Circumstances....................................................................14

    B.  The Proposed Form Of Class Notice Adequately Informs Class Members Of
        Their Rights In This Litigation ...........................................................15

VIII.  PROPOSED SCHEDULE OF EVENTS.....................................................15

CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997) ..................................................................................12

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...........................................3

*Austin v. Pa. Dep't of Corr.,*
  876 F. Supp. 1437 (E.D. Pa. 1995) ......................................................8

*Babyage.com, Inc. v. Toys "R" Us, Inc.,*
  558 F. Supp. 2d 575 (E.D. Pa. 2008) (Brody, J.) ...............................3

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................3

*In re Chambers Dev. Securities Litig.,*
  912 F. Supp. 822 (W.D. Pa. 1995) ......................................................9

*DeBoer v. Mellon Mortgage Co.,*
  64 F.3d 1171 (8th Cir. 1995) ..............................................................14

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975) ...............................................................10

In *re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995) ........................................................8, 9, 10

*In re Hydrogen Peroxide Antitrust Litig.,*
  552 F.3d 305 (3rd Cir. 2008) ................................................................3

*Leegin Creative Leather Prods. v. PSKS, Inc.,*
  551 U.S. 877 (U.S. 2007) ......................................................................3

*In re Linerboard Antitrust Litig.,*
  292 F. Supp. 2d 631 (E.D. Pa. 2003).................................................10

*McDonough v. Toys "R" Us, Inc.,*
  638 F. Supp. 2d 461 (E.D. Pa. 2009) (Brody, J.).......................passim

*In re Mid-Atlantic Toyota Antitrust Litig.,*
  564 F. Supp. 1379 (D.C. Md. 1983).....................................................9

*Mullane v. Central Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) ................................................................................................. 14

*Petrovic v. AMOCO Oil Co.,*
   200 F.3d 1140 (8th Cir. 1999) ................................................................................ 14

*In re Traffic Executive Ass'n – Eastern Railroads,*
   627 F.2d 631 (2d Cir. 1980) ..................................................................................... 9

*Walsh v. Great Atlantic & Pacific Tea Co.,*
   726 F.2d 956 (3d Cir. 1983) ...................................................................................... 9

*In re Warfarin Sodium Antitrust Litig.,*
   391 F.3d 516 (3d Cir. 2004) ...................................................................................... 8

*In re Wireless Telephone Federal Cost Recovery Fees Litigation,*
   No. MDL 1559 4:03-MD-015, 2004 WL 3671053 (W.D. Mo. April 20, 2004) .................. 14

## STATUTES

FED. R. CIV. P. 23 ................................................................................................ passim

The Sherman Act, 15 U.S.C. § 1 ............................................................................... 2

## OTHER AUTHORITIES

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:25, at 38-39 (4th ed.
   2002) (hereafter, "*Newberg on Class Actions*") ............................................... 8, 10

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) (hereafter "*Manual*") ............. 8, 9, 12, 14

## I.    OVERVIEW

All Plaintiffs in the *McDonough* and *Elliott* matters ("Plaintiffs") and Defendants Toys "R" Us, Inc., Babies "R" Us, Inc ., Toy "R" Us-Delaware, Inc. (collectively, "BRU" or "Babies "R" Us"), BabyBjörn AB ("BabyBjörn"), Britax Child Safety, Inc. ("Britax"), Kids Line, LLC ("Kids Line"), Maclaren USA, Inc. ("Maclaren"), Medela, Inc. ("Medela"), Peg Perego U.S.A., Inc. ("Peg Perego"), and Regal Lager, Inc. ("Regal Lager")[1] (collectively "Defendants") have agreed to a proposed Settlement Agreement dated January 21, 2011 ("Settlement")[2] of these cases (*McDonough* and *Elliott* will collectively be referred to as the "Litigation").   A copy of the Settlement is attached as Exhibit 1.[3]   Plaintiffs seek preliminary approval of the Settlement on behalf of the following Settlement Subclasses defined below:

- "All persons who directly purchased any BabyBjörn baby carrier from Babies 'R' Us within the U.S. for the period February 2, 2000, to April 30, 2005" ("BabyBjörn Settlement Subclass");

- "All persons who directly purchased any Britax car seat from Babies 'R' Us within the U.S. for the period January 1, 1999 to the date of Preliminary Approval" ("Britax Settlement Subclass");

- "All persons who directly purchased any Maclaren stroller from Babies 'R' Us within the U.S. for the period October 1, 1999 to the date of Preliminary Approval" ("Maclaren Settlement Subclass");

- "All persons who directly purchased any Medela Pump In Style breast pump from Babies 'R' Us within the U.S. for the period July 1, 1999 to the date of Preliminary Approval" ("Medela Settlement Subclass");

- "All persons who directly purchased any Peg Perego stroller from Babies 'R' Us within the U.S. for the period July 1, 1999 to the date of Preliminary Approval" ("Peg Perego Stroller Settlement Subclass");

---

[1] The "Manufacturer Defendants" are BabyBjörn, Britax, Kids Line, Maclaren, Medela, Peg Perego, and Regal Lager.
[2] All Capitalized Terms in this memorandum will have the same meaning as set forth in the Settlement.
[3] All exhibits to the Settlement are designated as Exhibits A-H.  Ex. H to the Settlement is filed under seal.

- "All persons who directly purchased any Peg Perego high chair from Babies 'R' Us within the U.S. for the period July 1, 1999 to the date of Preliminary Approval" ("Peg Perego High Chair Settlement Subclass");
- "All persons who directly purchased any Peg Perego car seat from Babies 'R' Us within the U.S. during the period July 1, 1999 to the date of Preliminary Approval("Peg Perego Car Seat Settlement Subclass");
- "All persons who directly purchased any Kids Line Product from Babies 'R' Us within the U.S. for the period January 1, 1999, to December 31, 2006" ("Kids Line Settlement Subclass").

## II.    BACKGROUND

### A.  Background of the Litigation

The *McDonough* case originally arose in January 2006 when consumers nationwide alleged that BRU, the nation's dominant baby product retailer, had conspired with the Manufacturers to restrict competition in violation of federal antitrust law.  Plaintiffs alleged that, in a series of overlapping illegal agreements with BRU, conceived and implemented to fend off competition to BRU, the Manufacturer Defendants adopted or enforced resale price maintenance ("RPM") or internet sales policies which had the effect of causing higher prices to consumers and diminishing competition amongst retailers.  As noted by the Court in its July 15, 2009 memorandum granting class certification, "[t]his case concerns how BRU responded to this competition" by internet and discounting competitors.  *See* Court's Opinion of July 15, 2009, at 4 (*McDonough* Dkt. No. 585); *McDonough v. Toys "R" Us, Inc.*, 638 F. Supp. 2d 461, 466-467 (E.D. Pa. 2009) (Brody, J.).  In the Litigation, Plaintiffs seek to recover the overcharges incurred by Plaintiffs and the putative classes due to Defendants' alleged violations of Section 1 of the Sherman Act.

Plaintiffs in the *McDonough* case zealously prosecuted this matter over the last five years. During the course of the action, Plaintiffs were faced with several rounds of pleadings testing the sufficiency of the complaints under new standards espoused by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009),[4] the Supreme Court's decision rejecting the *per se* ban on RPM agreements and ruling that such agreements are to be judged under the rule of reason, *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877 (U.S. 2007), and a Third Circuit decision on class certification standards, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3rd Cir. 2008). This Court granted class certification, in part, of the *McDonough* subclasses after a three-day evidentiary hearing in mid-2009. *McDonough*, 638 F. Supp. 2d at 491.

Subsequent to the Court's decision to grant class certification, in part, as to the McDonough subclasses, the *Elliott* Plaintiffs filed suit specifically to cover those time periods and Defendants for which certification was not granted. *See Elliott* Complaint (Dkt #1.)

Finally, in early 2010 in *McDonough,* the Court granted Defendants' motion to sever the trials by Defendant, and scheduled the first trial against BRU and Medela for January 2011. (Dkt # 662.)

## III.    HISTORY OF SETTLEMENT NEGOTIATIONS

In May 2010, the parties engaged Professor Eric Green to act as a mediator in these matters. During the course of a three-day in-person mediation attended by both counsel and many of Defendants' top management, the parties reached a tentative agreement on the monetary terms of a proposed settlement. However, it took the parties another four months and hundreds of hours of extensive phone calls and writings through Professor Green to negotiate a Memorandum of Understanding which was signed on September 29, 2010. Thereafter, the parties continued to

---

[4] *See Babyage.com, Inc. v. Toys "R" Us, Inc.*, 558 F. Supp. 2d 575 (E.D. Pa. 2008) (Brody, J.).

negotiate the details of the proposed Settlement, by telephone, email and an in-person meeting, until the final Settlement was signed on January 21, 2011.

Class Counsel are experienced litigators, who effectively represented their respective clients' interests throughout the process.  Counsel for the parties vigorously advocated their respective positions, and reached a compromise only after spirited arm's-length negotiations. The final product of the negotiation process is a settlement that is clearly within the range of possible final approval, and thus easily meets the standard for preliminary approval.

## IV.  MATERIAL TERMS OF PROPOSED AMENDED SETTLEMENT

### A.  Class Benefits

Under the proposed settlement, Defendants will provide significant monetary benefits to Authorized Claimants in the Settlement Subclasses.[5]  Defendants will pay $35.5 million in cash ("Settlement Amount") into an escrow account as a designated settlement fund. (*See* Settlement, ¶¶ 1(ee), 11-12.)  The Settlement Amount, after payment of certain fees and expenses, will be allocated among the Settlement Classes according to the percentage of the total damages for which each Defendant accounts.  (*See* proposed Allocation Order, Ex. F.) At Final Approval, Plaintiffs will request that the Court allocate the Net Settlement Fund among the Settlement Classes as follows:

- BabyBjörn Settlement Class: 6%
- Britax Settlement Class: 28%
- Maclaren Settlement Class:  7%
- Medela Settlement Class: 22%
- Peg Perego Stroller Settlement Class: 9%
- Peg Perego High Chair Settlement Class: 4%
- Peg Perego Car Seat Settlement Class:3%
- Kids Line Settlement Class: 21%

("Individual Settlement Funds").  (*See* Allocation Order, Ex. F, ¶ 3.)

---

[5] Excluded from the Settlement Class will be all persons who validly and timely request exclusion from the class in accordance with this Court's order granting preliminary approval and directing the dissemination of class notice. (Settlement, ¶ 31.)

Each Settlement Class Member must submit a verified claim form with a sworn affidavit with or without documentary proof of the necessary purchase(s) of one or more Settlement Products to be eligible to be paid from any Individual Settlement Fund. (*See* Settlement, ¶¶ 18-20; *see also* Claim Form and Allocation Order, Exs. D and F.)   If a Settlement Class Member submits valid documentary proof of the actual purchase price he or she paid for a Settlement Product, the Settlement Class Member may receive a maximum of three times 20 percent of the actual purchase price of each Settlement Product which he or she purchased. (Ex. F, ¶ 6(a).)   If a Settlement Class Member does not submit documentary proof of his or her actual purchase price, but otherwise submits a valid proof of purchase, he or she will be eligible to receive a maximum of three times 20 percent of the estimated retail price (as calculated by Class Counsel using available information) of each Settlement Product which he or she purchased. (Ex. F, ¶ 6(b).)   If a Settlement Class Member does not submit any proof of purchase or purchase price at all, but otherwise submits a valid, sworn and timely Claim Form, he or she will be eligible to receive a one-time payment of $5.00 from each Individual Settlement Fund(s) for which he or she is eligible (Ex. F, ¶ 6(c).)

However, depending on the number of claims submitted for payment from each Individual Settlement Fund, each claim may be subject to certain pro rata enhancements or reductions.[6]  (Ex. F, ¶¶ 7-11.)   If the claims submitted would exhaust a particular Individual Settlement Fund, the claims may be subject to pro rata reductions.[7]  (Ex. F, ¶¶ 8-9.)   If the claims submitted do not exhaust an Individual Settlement Fund, the claims may be enhanced up to three times the authorized claims.  (Ex. F, ¶ 7.)

Subject to the approval of the Court, allocation of the Settlement Fund among the Classes is based on, among other things, the alleged percentage overcharge as calculated by Plaintiffs' damages experts per product, the relevant time period, the evidence developed to date, risks of litigation, and likelihood of recovery.

---

[6] Claims of Settlement Class Members that do not submit any proof of purchase or purchase price are not subject to any enhancements under any circumstances, but may be subject to certain pro rata reductions. (Ex. F, ¶¶ 7-9.)
[7] *See also* Ex. F, ¶¶ 10-11 (explaining how the aggregate excess from any funds will be used to increase any exhausted funds).

### B.   Class Notice

Pursuant to the Settlement Agreement, Plaintiffs have selected a qualified third-party settlement administrator, The Garden City Group, Inc. ("GCG"), to update class members' addresses, mail notice of the settlement to class members, receive exclusion requests, process class members' claims, respond to class member inquiries, issue settlement checks to claimants, and conduct other activities relating to class notice and settlement administration under the parties' supervision.  (*See* Settlement, ¶ 1(e).)

Plaintiffs have also retained a renowned expert on Class Notice, Jeanne C. Finegan of GCG, to develop a notice plan that meets the requirements of due process. (Declaration of Jeanne C. Finegan ("Finegan Decl."), attached as Exhibit 2.) As set forth in her Declaration, Ms. Finegan composed a notice program designed to reach at least 72 percent of the Settlement Subclass Members. (Finegan Decl., ¶ 37.)  The notice program includes:

- Direct Mail and/or E-mail Notice to those Settlement Subclass Members for whom BRU provided addresses;
- Publication of a short-form notice ("Summary Notice") in these nationally circulated magazines: Parade Magazine, USA Weekend, Parents Magazine, and People en Español;
- Internet based notice through banner ads posted on 24/7 Network (a network which includes 2,500 websites covering news, family, entertainment and women's interests, among others) MSN Hotmail, and Univision;
- A traditional press release issued through PR newswire in both English and Spanish;
- Opt-in text messaging with the text code prominently displayed on the summary notice;
- An informational website (www.babyproductsantitrustsettlement.com), on which the notices and other important Court documents will be posted; and
- A toll-free information line where Settlement Subclass Members can call for more information and request copies of the claim packet.

(Finegan Decl., ¶¶ 14-22, 28-36.)

The Long-Form Notice mailing or emailing describes the material terms of the proposed Settlement and the procedures for each class member to receive the benefits under the

Settlement. (Ex. B.) The notice also describes the procedures for Settlement Subclass Members to exclude themselves from the Settlement and to provide comments in support of or in objection to the Settlement. (*See id.*) Any Settlement Subclass Member who wishes to be excluded from the settlement can opt-out by making a timely request. The procedures for opting-out are those commonly used in class action settlements and are straightforward and clearly described in the class notice. (*See id.*)

If the Court grants final approval of the proposed Settlement, after Settlement Subclass Members are notified and the time period for opt-out requests and objections expires, all Settlement Subclass Members who do not request exclusion from the class will be deemed to have released all claims against Defendants related to any and all claims, including under federal or state antitrust or unfair competition law, arising from or related to the wholesale or retail pricing, discounting, marketing, advertising, distribution or sale of BabyBjörn baby carriers, Britax car seats, Kids Line Products, Maclaren strollers, Medela Pump in Style breast pumps, Peg Perego strollers, Peg Perego car seats, or Peg Perego high chairs (the "Released Claims"). (*See* Settlement, ¶¶ 1(aa), 10.) Released Claims do not include entirely unrelated claims such as allegations of false advertising or misrepresentations relating to the performance of the products purchased, personal injury, or breach of warranty or breach of contractual relationships relating to the performance of the products purchased. (*See* Settlement, ¶ 10.)

### C.   Plaintiffs' Incentive Awards and Attorneys' Fees

Pursuant to the Settlement Agreement, Class Counsel may apply for an incentive award of up to $2,500 for each of the Settlement Subclass Representatives who were instrumental in prosecuting this case, such as by retaining counsel, reviewing and authorizing the filing of the complaints, submitting information to counsel, sitting for their depositions and reviewing the proposed Settlement. (*See* Settlement, ¶ 26; *see also* Ex. G.) The incentive awards will be paid from the Settlement Fund.

On behalf of Class Counsel and supporting Plaintiffs' counsel, Class Counsel will also file a motion with the Court for an award of attorneys' fees not to exceed 33 1/3 percent of the Settlement Fund, in compensation for the services provided. Class Counsel will also seek an

award of expenses advanced by plaintiffs' counsel in this case since its inception. Settlement Class Counsel will use their discretion to distribute the award among all Plaintiffs' counsel. Defendants will not oppose or dispute such an application. (*See* Settlement, ¶ 26.) Class Counsel reserve the right to make additional fee and expense applications to the Court for fees and expenses actually incurred in administration of the Settlement. (*See* Settlement, ¶ 27.)

## V.    ARGUMENT

### A.  Preliminary Approval Of The Proposed Settlement Is Appropriate.

#### 1.    Overview of the Class Settlement Approval Process

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also* In re *GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (holding that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1995) (explaining that "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy encouraging settlements to 'an overriding public interest'").

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must obtain the court's approval. *See* FED. R. CIV. P. 23(e). Approval of a class action settlement involves a two-step process. First, counsel submits the proposed terms of settlement and the court makes a preliminary fairness evaluation. *See Manual for Complex Litigation* § 21.632 (4th ed. 2004) (hereafter "*Manual*"); *see also* 4 Alba Conte & Herbert

Newberg, *Newberg on Class Actions* § 11:25, at 38-39 (4th ed. 2002) (hereafter, "*Newberg on Class Actions*") (endorsing two-step process).   If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the Settlement.   *See Manual* § 21.633.

Authorization to disseminate notice is recognition by the Court that the settlement is in the range of possible approval.   *See, e.g., In re Chambers Dev. Securities Litig.*, 912 F. Supp. 822, 827 (W.D. Pa. 1995).   It is akin to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full scale hearing as to its fairness."   *In re Traffic Executive Ass'n – Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). A settlement falls within the "range of possible approval" under Rule 23 if there is a conceivable basis for presuming that the standard applied for final approval will be satisfied.   The standard for final approval of a settlement is that the settlement is fair, adequate and reasonable to the class.   *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983).

When deciding preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate."   *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D.C. Md. 1983); see also *In re General Motors Corp.*, 55 F.3d at 785 (holding that the "preliminary determination establishes an initial presumption of fairness.").   That determination must await the final hearing, at which the fairness, reasonableness, and adequacy of the

settlement is assessed.  *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).[8]

The parties now respectfully request that this Court take the first step in the settlement approval process and grant preliminary approval of the Settlement.

### 2.    A Review of the Applicable Factors Favors Approval of the Settlement.

The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[9] *In re Linerboard*, 292 F. Supp. 2d at 638.  After consideration of those factors, if this Court concludes that the Settlement should be preliminarily approved, "… an initial presumption of fairness …" is established. *In re Linerboard*, 292 F. Supp. 2d at 638 (*citing In re Gen. Motors Corp.*, 55 F.3d at 785). *See also Newberg on Class Actions* § 11:41 (noting that courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.")  Here, application of these factors demonstrates that the Settlement should be preliminarily approved.

First, the negotiations clearly occurred at arms-length.  It was not until after four years' worth of pleadings testing the sufficiency of the complaints, full class certification proceedings and the Court's setting of a trial date that the parties even engaged a mediator in an attempt to negotiate a settlement.  In May 2010, the parties were aided in a three-day in-person mediation by Professor Eric Green.  The negotiations were complex, hard-fought and time consuming. While the parties reached the contours of a settlement in May 2010, the parties continued to negotiate for four months, with the help of Professor Green, in order to reach a Memorandum of

---

[8] The factors considered for final approval of a class settlement as "fair, reasonable and adequate" include: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).
[9] The last factor is actually more aptly applied at final approval, after the time for class members to object has expired.

Understanding.   Moreover, it took the parties an additional four months to negotiate a full Settlement Agreement. There can be no question that these negotiations have been highly adversarial, and always at arms' length.

Next, the parties, through *McDonough,* conducted extensive discovery.  This discovery included the review of over one million (1,000,000) pages of documents produced by the Defendants and third parties, over thirty (30) depositions of fact witnesses (excluding the additional depositions of Plaintiffs), a three-day evidentiary hearing on Plaintiffs' motion for certification of the *McDonough* Subclasses, and the exchange of reports by and depositions of testifying expert witnesses. In fact, at the time the parties began negotiations, discovery was closed, and the parties were preparing for summary judgment and trial.

With respect to the third factor, counsel for both Plaintiffs and Defendants are among the most well-respected in antitrust actions as well as the prosecution and defense of class actions. Moreover, this Court has had the first hand experience of assessing this factor through multiple court filings, briefs, discovery disputes and oral arguments.   The terms of the proposed Settlement were thus reached only after extensive arm's-length negotiations between attorneys familiar with the legal and factual issues of the case and well versed in litigating similar antitrust class claims.  The parties naturally dispute the strength of the Plaintiffs' case, and the Settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes.

This case is complex, carries significant risks for all parties as to both legal and factual issues, and would consume a great deal of time and expense if the parties litigated it through the single Manufacturer trials envisioned by the Court.  In light of the risk and delay of litigation, weighed against the substantial benefits the Settlement will provide to the Settlement Subclasses, the proposed resolution is a fair, reasonable and adequate compromise of the issues in dispute and should be preliminarily approved.

## VI.   THE PROPOSED SETTLEMENT SUBCLASSES SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

### A.   The Proposed Settlement Subclasses Meet The Requirements Under *Amchem* For Certification of A Settlement Class.

Before granting preliminary approval of a settlement in a case where a class has not yet been certified, the court should determine whether the class proposed for settlement purposes is appropriate under Rule 23.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual* § 21.632.  In certifying a settlement class, however, the court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; s*ee also* FED. R. CIV. P. 23(b)(3)(D).

Here, the Court is not starting from square one, but based on its prior review, can determine that the proposed Settlement Subclasses meet all of the requirements of Rule 23(a) and satisfy the requirements of Rule 23(b)(3).  This Court has already stringently reviewed and certified the *McDonough* classes under Rule 23.  Now, Plaintiffs request that the Court approve the following:

(1) maintain class certification of and preliminarily approve the Settlement with respect to the BabyBjörn Settlement Subclass (*see McDonough,* 638 F. Supp. 2d at 492; Settlement, ¶ 1(ii)(i));

(2) extend the end date of the *McDonough* Subclasses, for purposes of Settlement Only, to the date of Preliminary Approval and preliminarily approve the Settlement with respect to the Britax Settlement Subclass, Maclaren Settlement Subclass, Medela Settlement Subclass, and Peg Perego Stroller Settlement Subclass (*see McDonough,* 638 F. Supp. 2d at 492; Settlement, ¶¶ 1(ii)(ii), (iv), (v), (vi));

(3) grant provisional class certification, for purposes of Settlement only, and preliminarily approve the Settlement with respect to the Peg Perego High Chair Settlement Subclass, the Peg Perego Car Seat Settlement Subclass and Kids Line Settlement Subclass.  (Settlement, ¶¶ 1(ii)(iii), (vii), (viii).)

First, with respect to the BabyBjörn Settlement Subclass, this Court has already conducted the analysis with respect to Rule 23. *See generally McDonough*, 638 F. Supp. 2d at 492.

Next, with respect to the Britax Settlement Subclass, Maclaren Settlement Subclass, Medela Settlement Subclass, and Peg Perego Stroller Settlement Subclass, this Court has already certified the classes through January 19, 2006. *Id.* During the settlement negotiations, the parties negotiated consideration and a release for these Subclasses through the date of Preliminary Approval. Because this Court has already conducted a Rule 23 analysis, these Settlement Subclasses should be provisionally certified.

Finally, this Court previously considered whether the Peg Perego High Chair Settlement Subclass, Peg Perego Car Seat Settlement Subclass and Kids Line Settlement Subclass could be certified pursuant to Rule 23. The sole reason for this Court's dismissal of the claim against Kids Line at the time of class certification was a lack of standing for the proposed class representatives. *McDonough*, 638 F. Supp. 2d at 491. Plaintiffs have rectified this problem with the filing of *Elliott*, in which Plaintiffs Beth Hellman and Kelly Pollock have standing to allege and do allege claims against Kids Line.

This Court previously declined to certify an all-encompassing class comprised of Peg Perego high chairs, car seats and strollers. *McDonough*, 638 F. Supp. 2d at 474. The Court noted that each of these products would be in a different market and could encompass different evidence as to conspiracy. *Id.* Accordingly, the Court certified a class comprised only of Peg Perego stroller purchasers. *Id.* Plaintiffs have rectified this issue in *Elliott* by alleging separate claims on behalf of separate Subclasses for high chair purchasers and car seat purchasers. Moreover, as this Court previously noted Plaintiff Sarah Otazo purchased a Peg Perego high chair. *Id.* She thus has standing to represent the Peg Perego High Chair Subclass. Moreover, *McDonough* Plaintiffs Lawrence McNally and Stephanie Bozzo purchased Peg Perego car seats, and thus can represent the Peg Perego Car Seat Subclass. Accordingly, for the same reasons as set forth in the *McDonough* Rule 23 proceedings, Plaintiffs seek

provisional certification of the Peg Perego High Chair Settlement Subclass, Peg Perego Car Seat Settlement Subclass and Kids Line Settlement Subclass.

The practical purpose of provisional class certification is to facilitate dissemination of notice to the class of the terms of the proposed settlement and the date and time of the final-approval hearing. *See* Manual, § 21.633.

## VII. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE.

### A. The Proposed Class Notice Provides for the Best Notice Practicable Under the Circumstances.

Under Rule 23(e) of the Federal Rules of Civil Procedure, the Court must direct notice in a reasonable manner to class members who would be bound by the proposed class settlement. "There is no one 'right way' to provide notice as contemplated under Rule 23(e)." *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, No. MDL 1559 4:03-MD-015, 2004 WL 3671053, *8-9 (W.D. Mo. April 20, 2004). "Notice of a settlement proposal need only be as directed by the district court… and reasonable enough to satisfy due process." *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995). It should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the parties propose that notice of the proposed settlement will be mailed and publicized as set forth by expert Jeanne Finegan. (*See generally* Finegan Declaration, Ex. 2.) The notice program is extensive and intends to reach at least 72 percent of the class members. *Id. See also* Section IV.B, *supra*. Thus, the notice program meets the requirements of Rule 23(c)(2). *See* FED. R. CIV. P. 23(c)(2) (the best notice practicable under the circumstances should include individual notice to all members who can be identified through reasonable effort).

**B.     The Proposed Form Of Class Notice Adequately Informs Class Members Of Their Rights In This Litigation.**

Any notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. *See* FED. R. CIV. P. 23(c)(2).

The form of class notice proposed here complies with those requirements. (*See* Exs. B and C.)   The notice informs Settlement Subclass Members of the material terms of the Settlement; the relief the proposed settlement will provide; the date, time and place of the final-approval hearing; the procedures and deadlines for opting out of the settlement or submitting comments or objections; and that, if they do not opt out, they will be bound by any final judgment in this case, including a release of claims.   The proposed notice also advises Settlement Subclass Members that Plaintiffs' counsel have pursued the lawsuit on a contingent basis and have not received any payment of fees or any reimbursement of their out-of-pocket expenses. The proposed notice further advises class members that Plaintiffs' counsel will apply to the Court for an award of fees and expenses. (*See id.*)    Lastly, the proposed notice informs Settlement Subclass Members that Plaintiffs' counsel will seek incentive awards of up to $2,500 for each of the Settlement Subclass Representatives. (*See id.*)

Thus, the notice is accurate and informs Settlement Subclass Members of the material terms of the settlement and their rights pertaining to it.   The Court should therefore approve the proposed forms of notice, and direct that they be disseminated as proposed by the parties.

## VIII.   PROPOSED SCHEDULE OF EVENTS

The next steps in the settlement approval process are to notify the Settlement Subclasses of the proposed settlement, allow Class Members an opportunity to file any objections, and hold a final approval hearing.   Toward those ends, the parties propose the following schedule, which is incorporated in the accompanying proposed order:

May 30, 2011          Last day to complete class notice.

| June 6, 2011 | Last day to file papers in support of final approval of the settlement and any application for incentive awards, and attorneys' fees and expenses. |
| June 13, 2011 | Last day for Settlement Subclass Members to file comments in support of, or in objection to, the settlement and/or fee application. |
| June 13, 2011 | Last day for Settlement Subclass Members to request exclusion from the Settlement Class. |
| June 20, 2011 | Last day for responses to any objections to the settlement and/or fee application. |
| Any day on or after June 27, 2011 | Final settlement approval hearing. |
| August 1, 2011 | Date by which all claims must be received by Claims Administrator if submitted via electronic mail or facsimile transmission, or postmarked if submitted via U.S. Mail. |

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court:

(a)     preliminarily approve the parties' proposed Settlement Agreement:

(b)     certify the following Rule 23(b)(3) Settlement Subclasses for settlement purposes only:

- "All persons who directly purchased any BabyBjörn baby carrier from Babies 'R' Us within the U.S. for the period February 2, 2000, to April 30, 2005" ("BabyBjörn Settlement Subclass");

- "All persons who directly purchased any Britax car seat from Babies 'R' Us within the U.S. for the period January 1, 1999 to the date of Preliminary Approval" ("Britax Settlement Subclass");

- "All persons who directly purchased any Maclaren stroller from Babies 'R' Us within the U.S. for the period October 1, 1999 to the date of Preliminary Approval" ("Maclaren Settlement Subclass");

- "All persons who directly purchased any Medela Pump In Style breast pump from Babies 'R' Us within the U.S. for the period July 1,

1999 to the date of Preliminary Approval" ("Medela Settlement Subclass");

- "All persons who directly purchased any Peg Perego stroller from Babies 'R' Us within the U.S. for the period July 1, 1999 to the date of Preliminary Approval" ("Peg Perego Stroller Settlement Subclass");

- "All persons who directly purchased any Peg Perego high chair from Babies 'R' Us within the U.S. for the period July 1, 1999 to the date of Preliminary Approval" ("Peg Perego High Chair Settlement Subclass");

- "All persons who directly purchased any Peg Perego car seat from Babies 'R' Us within the U.S. during the period July 1, 1999 to the date of Preliminary Approval ("Peg Perego Car Seat Settlement Subclass");

- "All persons who directly purchased any Kids Line Product from Babies 'R' Us within the U.S. for the period January 1, 1999, to December 31, 2006" ("Kids Line Settlement Subclass").

(c)   appoint The Garden City Group, Inc. as the class action administrator;

(d)   order notice of the proposed settlement to Settlement Subclass Members; and

(e)   enter the schedule set forth above, or another schedule at the convenience of the Court for final approval proceedings.

Dated: January 21, 2011

Respectfully submitted,

s/ Eugene A. Spector
Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 West Lake Street, Suite 400
Oak Park, IL 60301
Tel.: (708) 628-4949
Fax: (708) 628-4950

Steve W. Berman
Anthony D. Shapiro
George W. Sampson
Ivy Arai Tabbara
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

Mary Jane Fait
Theodore B. Bell
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Tel.: (312) 984-0000
Fax: (312) 984-0001

Fred T. Isquith
Thomas H. Burt
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLC
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 545-4653

**CLASS COUNSEL FOR THE
SUBCLASSES**