**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

CAROL M. MCDONOUGH, *et al.*,

                    Plaintiffs,      C.A. No. 2:06-cv-0242-NIQA

         v.

TOYS "R" US, INC., d/b/a/ Babies "R" Us,
*et al.*,

                    Defendants.

---

ARIEL ELLIOTT, *et al.,*

                      Plaintiffs,      C.A. No. 2:09-cv-06151-NIQA

         v.

TOYS "R" US, INC., d/b/a Babies "R" Us,
*et al.,*

                    Defendants.

---

**UNOPPOSED MOTION TO AMEND FINAL ORDER AND JUDGMENT APPROVING FOURTH AMENDED SETTLEMENT AND CERTIFYING SETTLEMENT SUBCLASSES, ALLOCATION ORDER AND DISTRIBUTION ORDER**

This motion is made by Defendants pursuant to Fed.R.Civ.P. 60 (b) and the general equitable power of this Court seeking to amend the previously entered Final Order and Judgment Approving Fourth Amended Settlement and Certifying Settlement Subclasses ("Final Order and Judgment") (ECF 896), Allocation Order (ECF 897) and Distribution Order (ECF 931) to authorize a change in the last phase of the settlement distribution mechanism to eligible class members from a "coupon" program to a "rebate" program. Plaintiffs, on behalf of themselves

1

and the Settlement Classes[1], have advised that they are not taking a position on the motion. The amendment is necessary because the coupon program previously contemplated is no longer possible due to the fact that, as a result of the bankruptcy proceedings filed in 2017 by Toys "R" Us, Inc. ("Toys "R" Us") and certain of its subsidiaries and affiliates, all of the Toys "R" Us and Babies "R" Us stores in the United States, where all coupons were to be redeemed, have been closed. This motion seeks to substitute a "rebate" program for eligible class members in place of the coupon program and to authorize the Claims Administrator to administer the revised program.

## BACKGROUND AND PROCEDURAL HISTORY

On January 21, 2015, this Court entered the Final Order and Judgment and approved the parties' Settlement Agreement finding, inter alia, that it was fair, reasonable and adequate. Also on January 21, 2015, this Court entered the Allocation Order (ECF 897) by which it approved an allocation of the Net Settlement Fund (as defined in the Settlement Agreement) to class members. In sum, the settlement provided first for a distribution of the Net Settlement Fund to all Authorized Claimants. Thereafter, to the extent that there were uncashed settlement checks or other amounts remaining in the Net Settlement Fund after the deadline within which to cash checks, the remaining amount (the "Final Remaining Amount") was to be distributed back to Defendants whom, with the Claims Administrator, would administer a "coupon" program in the amount of the Final Remaining Amount. The coupon program mechanism was to distribute coupons to Authorized Claimants up to the Final Remaining Amount. Authorized Claimants were those plaintiffs who had cashed or deposited their Net Settlement Fund checks, and for

---

[1] All capitalized terms will have the same meaning as set forth in the Fourth Amended Settlement Agreement (the "Settlement Agreement") (See McDonough at ECF 896, Elliott at ECF 177). Hereafter, citations will be only to the docket for McDonough when referencing the filings in both cases.

2

whom the Claims Administrator had valid email addresses and whom had not yet received the Maximum Enhanced Authorized Payment ("Eligible Coupon Recipients"). The coupons could be redeemed only in Toys "R" Us or Babies "R" Us stores in the United States for specified eligible products manufactured by certain of the Defendants.

On October 30, 2015, the Final Order and Judgment became a "final order" under the terms of the Settlement Agreement. Thereafter, Class Counsel and the Claims Administrator performed the steps necessary for the administration, review, processing and validation of all claims and calculated, pursuant to the terms of the Allocation Order, the pro rata share of distribution from the Net Settlement Fund for each Authorized Claimant.

On June 1, 2017, this Court entered the Distribution Order (ECF 931) and approved the distribution of the Net Settlement Fund to Authorized Claimants and payment to the Claims Administrator of approved fees and expenses. The checks for the settlement payment were valid for ninety (90) days from issuance.

The Claims Administrator distributed the Net Settlement Fund pursuant to the Distribution Order. Following the conclusion of the period during which checks could be cashed or deposited, $8,582,192.91 remained in the Net Settlement Fund (the "Final Remaining Amount").

Beginning on or about September 18, 2017, Toys "R" Us and certain of its subsidiaries and affiliates filed voluntary petitions under title 11 of the United States Code (the "Bankruptcy Code") in the Eastern District of Virginia – Richmond District (Case #17-34665 KLP). During the early stages of the bankruptcy proceedings, the settlement administration in this case proceeded, including the transfer of the Settlement Fund from escrow by the Settlement Trustees

and the distribution of the Net Settlement Fund to class members (and payment to the Claims Administrator).

As the parties were preparing for the coupon segment of the settlement, it was announced that as part of its bankruptcy proceedings, Toys "R" Us would be closing its U.S. Toys "R" Us and Babies "R" Us retail stores. As a result, the coupon program would not have been fully effective as, *inter alia*, the stores at which the coupons were to be redeemed would not have been open for all or part of the planned coupon redemption period.

The parties did, however, agree to transfer the Final Remaining Amount to Defendants as required by the Settlement Agreement and the Distribution Order. Defendants specifically agreed to hold such funds pending the earliest to occur of (i) completion of a Court approved coupon program, (ii) further agreement between Class Counsel and Defendants, or (iii) a required Order from the necessary Court.[2]

Defendants, working with the Claims Administrator, have explored suitable options to substitute for the coupon program. A rebate program (the "Rebate Program") is believed to be the best alternative to provide a benefit to Eligible Coupon Recipients closely equivalent to that which they would have received pursuant to the coupon program.

In short, the Rebate Program will allow for Eligible Coupon Recipients to purchase specified products, manufactured by certain of the Defendants, at any United States retailer, either online or in store. The rebate form (Exhibit "A" hereto) may be used for a single purchase only and will be transferable and available for use for ninety (90) days from the date of issuance

---

[2] At the time of the transfer in 2018, the Toys "R" Us bankruptcy proceedings were ongoing and there was a question as to which Court would have jurisdiction concerning such issues. The Fourth Amended Chapter 11 Plan of Toys "R" Us, Inc. went effective on January 20, 2019 (the "Effective Date").

of the rebate forms. Completed rebate forms, with the required accompanying documentation, will be processed by the Claims Administrator and rebate checks will be mailed to those with approved claims. Checks will be valid for thirty (30) days. A schedule of proposed individual rebate amounts has been determined by the Claims Administrator using calculations for a distribution consistent with the provisions in paragraphs 2-5 of the Allocation Order. For ease of administration, a limited number of round dollar rebate amounts were created for which Eligible Coupon Recipients would be eligible. From the schedule of the calculated distribution, ranges for the proposed rebate amounts were created and similarly situated Eligible Coupon Recipients were included in the appropriate range for a round dollar rebate amount.

This alternative mechanism meets the requirements for Fed.R.Civ.P. 60 (b) for an amendment of the settlement, in that there has been a significant changed circumstance warranting such change, and the proposed change is suitably tailored to the changed circumstance. See Point I below. Thus, the closure of the Toys "R" Us and Babies "R" Us stores clearly warrants the change in the agreement so that an equivalent benefit to Eligible Coupon Recipients can be provided[3]. The Rebate Program is suitably tailored to the change in circumstance as it will permit Eligible Coupon Recipients to make the purchases necessary to qualify for the rebate benefit at any United States retailer, in store or online.

For all of these reasons, and the reasons described more fully below, Defendants request that this motion be granted and the amendment to the settlement be granted in all respects.

---

[3] Please note that the Toys "R" Us stores that are currently located in Macy's stores and in other locations in the United States are not owned by Defendant Toys "R" Us and are operated under licensing agreements with third parties. In addition, these stores are significantly different in scope of product offerings previously available at the Toys "R" Us stores operated by Defendant Toys "R" Us.

# ARGUMENT

# POINT I

## AN AMENDMENT TO A CLASS ACTION SETTLEMENT IS AUTHORIZED

*Fed R. Civil. P*. 60(b) provides in pertinent part as follows:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

The Third Circuit has recognized that District Courts have inherent power or general equitable power to modify the terms of a class action settlement. See *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 706 F.3d 217, at *n. 8 (3d Cir. 2013) ("[D]istrict court retains 'general equitable power to modify the terms of a class action settlement.'") (*quoting In re Cendant*, 233 F.3d 188, 194 (3d Cir. 2000). See also *Horne v. Flores*, 557 U.S.433, 447-48 (2009) ("*Rule* [60(b)(5)] provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law'"); *Baez v. N.Y. City Hous. Auth.*, 2018 WL 6242224 at *2 (S.D.N.Y. Nov. 29, 2018) ("("*Rule* 60(b)(5) furnishes the appropriate standard for analyzing Plaintiffs' motion, which at bottom seeks to amend the class action settlement that this Court approved under *Rule*

6

23(e) four years ago."). More recently, in *Ferrick v. Spotify USA Inc.*, Case No. 1:16-cv-08412 (AJN) (S.D.N.Y.), by Order dated May 10, 2021, Judge Nathan in the Southern District of New York granted the unopposed motion pursuant to *Fed. R. Civ. P.* 60(b)(5) of Defendant Spotify USA Inc. to modify the class action settlement in that action based upon a change in the law.

Thus, *Rule* 60(b) allows courts to modify an order approving a settlement agreement or a consent decree, by providing that on "just terms," a court "may relieve a party or its legal representative from a final judgment, order, or proceeding" if, among other things, "applying it prospectively is no longer equitable" or for "any other reason that justifies relief." *Fed. R. Civ. P.* 60(b)(5), (6); *see Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378–79, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992) (applying Rule 60(b) to modification of consent decrees); *Pigford v. Veneman*, 292 F.3d 918, 925–28 (D.C.Cir.2002) (same). Relief under Rule 60(b) is available only under such circumstances that the "overriding interest in the finality and repose of judgments may properly be overcome." *Martinez–McBean v. Government of the Virgin Islands,* 562 F.2d 908, 913 (3d Cir.1977).

The Supreme Court has held that modification of a consent decree pursuant to Rule 60(b)(5) is appropriate in the following circumstances: (1) "when changed factual conditions make compliance with the decree substantially more onerous"; (2) "when a decree proves to be unworkable because of unforeseen obstacles"; or (3) "when enforcement of the decree without modification would be detrimental to the public interest." *Rufo*, 502 U.S. at 384-85; *see also Pigford v. Johanns*, 416 F.3d 12, 23 (D.C.Cir.2005) ("A movant under Rule 60(b)(5) must demonstrate 'changed circumstances' since the entry of the judgment from which relief is sought.").

7

"*Rufo's* two prong test requires the moving party to establish, first, that a significant change in circumstances warrants revision of the decree and, second, that the proposed modification is suitably tailored to the changed circumstance." *In re Consol. Non-Filing Ins. Fee Litig.*, 431 F. App'x 835, 839 (11th Cir. 2011). In *Rufo*, the Supreme Court set out six types of either changed factual or changed legal circumstances that could warrant modification of a consent decree. The *Rufo* Court held that a significant change in circumstances that warrants modification may be established by showing: (1) changed factual conditions that make compliance with the decree substantially more onerous; (2) the decree is unworkable because of unforeseen obstacles; (3) enforcement of the decree without modification would be detrimental to the public interest; (4) one or more of the obligations the decree places upon the parties has become impermissible under federal law; (5) a change in the law has made legal what the decree was designed to prevent; or (6) a clarification of the law, if it can be shown the parties based their agreement on a misunderstanding of the governing law. *Rufo,* at 384, 388, 390.

Accordingly, under the unusual and unforeseen circumstances present here where performance of the anticipated requirements of a settlement agreement no longer are possible, it is permissible for the Court to grant an amendment of the settlement agreement in order to permit final relief. The proposed amendment meets the requirements of *Rufo* as the modification is tailored to meet the changed circumstance.[4]

Here, it cannot be disputed that the coupon program could not have been completed in a manner that would have provided the intended benefit to Eligible Coupon Recipients and that an alternative was needed. In addition, with the assistance of the Claims Administrator, Defendants

---

[4] Although consent decrees can be treated differently than private settlements, a Court approved class action settlement in which there are Court Orders directing future actions and the Court has retained jurisdiction is effectively the same.

have succeeded in designing a suitable alternative in the form of the Rebate Program to obtain the closest possible relief for Eligible Coupon Recipients as they would have received with a coupon program. As detailed below, the Rebate Program would accomplish the spirit of the last phase of the settlement distribution and is an adequate substitute for the coupon program.

**POINT II**

**THE REBATE PROGRAM PROVIDES ESSENTIALLY EQUIVALENT BENEFITS TO ELIGIBLE COUPON RECIPIENTS**

The Rebate Program has been designed to mirror the essential terms of the coupon program and provide equivalent relief to Eligible Coupon Recipients. For those reasons, it is requested that the proposed amendment of the Settlement Agreement be granted and the Rebate Program approved.

The coupon program was to distribute to Authorized Claimants coupons that, in the aggregate, approximated the Final Remaining Amount. Authorized Claimants who had cashed or deposited their settlement checks in a timely way, for whom the Claims Administrator had email addresses and had not already received the Maximum Enhanced Authorized Payment, were Eligible Coupon Recipients. They were to receive a single use coupon, for use in connection with the purchase at Toys 'R Us or Babies 'R Us stores in the United States of specified products[5] manufactured by the remaining defendants as described in the proposed form of the coupon (Exhibit I to the Settlement Agreement).

Similarly, the proposed Rebate Program is designed to provide the equivalent benefit to Eligible Coupon Recipients. However, instead of coupons redeemable only in person in Toys

---

[5] At the time of the settlement, the products included BabyBjörn baby carriers, Britax car seats, Kids Line products, Maclaren strollers, Medela Pump In Style breast pumps, Peg Perego car seats, Peg Perego high chairs and Peg Perego strollers. In the interim, both Kids Line and Maclaren have gone out of business.

9

"R" Us or Babies "R" Us stores, Eligible Coupon Recipients will be able to electronically submit a rebate form (with proper documentation) to the Claims Administrator following an authorized purchase at any retailer and will then receive a check in the amount of the authorized rebate. The purchases may be in stores or online, thereby providing an additional benefit to the Eligible Coupon Recipients. For both the coupon and now the rebate form, the coupon/rebate form would be transferable. In both instances, these are for single purchase use. There is a slight difference in the timing between the rebates and the coupons because of the need to issue checks pursuant to the Rebate Program. Although the 120 day total period is essentially the same, the rebate form (with documentation) must be submitted within ninety (90) days of issuance, unlike the coupons which could be redeemed within 120 days. And, eligible class members who properly submit their rebate forms will have thirty (30) days from issuance within which to cash their checks.

Another modest difference is that, for ease of administration, the rebate amounts for class members have been organized by ranges of the allocations and are set pursuant to a schedule of round dollar amounts ranging from $5.00 to $240.00. The schedule, which also reflects a comparison between the pro rata and the recommended amounts, is as follows:

| Pro Rata Rebate Amount Groups[a] | Class Member Count | Pro Rata Rebate Calculation[b] | Recommended Rebate Amount Per Class Member | Total Recommended Rebate Group Amount[c] | Average Pro Rata Rebate Amount[d] |
|---|---|---|---|---|---|
| between $.01 and $7.50 | 68,154 | $293,764.56 | $5.00 | $340,770.00 | $4.31 |
| between $7.51 and $15.00 | 23,999 | $229,019.48 | $10.00 | $239,990.00 | $9.54 |
| between $15.01 and $20.00 | 100,055 | $1,964,941.55 | $20.00 | $2,001,100.00 | $19.64 |
| between $20.01 and $30.00 | 139,273 | $3,682,368.69 | $26.00 | $3,621,098.00 | $25.00 |
| between $30.01 and $50.00 | 27,276 | $1,140,693.53 | $40.00 | $1,091,040.00 | $41.82 |
| between $50.01 and $75.00 | 13,433 | $779,735.19 | $58.00 | $779,114.00 | $58.05 |
| between $75.01 and $100.00 | 2,651 | $223,184.68 | $85.00 | $225,335.00 | $84.19 |
| between $100.01 and $150.00 | 667 | $77,965.16 | $115.00 | $76,705.00 | $116.89 |
| between $150.01 and $200.00 | 68 | $11,707.74 | $175.00 | $11,900.00 | $172.17 |
| Over $200.00 | 27 | $6,397.31 | $240.00 | $6,480.00 | $236.94 |
| Footnotes: | | (a) Range of claim amounts within each grouping multiplied by rebate percentage (42.846%) | | | |
| | | (b) Total class member group claim amount multiplied by rebate percentage (42.846%) | | | |
| | | (c) Total class member group count multiplied by recommended rebate amount per plaintiff | | | |
| | | (d) Pro rata rebate calculation divided by class member count | | | |

Because they would have been processed automatically by the stores at the cash register, the coupon amounts could be individual. This would not be workable for the Claims Administrator with rebates. The result of this change is that some class members may be eligible for a rebate in an amount slightly higher or slightly lower than their respective coupon amount would have been. In both instances, however, the total amount being allocated in coupons/rebates to Eligible Coupon Recipients is effectively the same.[6]

Accordingly, the proposed Rebate Program provides an adequate substitute for the originally agreed upon coupon program. As the coupon program cannot be implemented, in order to grant to Eligible Coupon Recipients an essentially equivalent benefit, the amendment to the Settlement Agreement should be approved and the Rebate Program authorized. Funds remaining after the period for cashing or depositing rebate checks will be distributed to the

---

[6] The total coupon amounts allocated would have been approximately $8,582,192.91. The total rebate amounts allocated will be $8,393,532.00. The difference represents an addition of the interest accrued in the interim less a reserve set for necessary additional expenses of the Claims Administrator.

moving Defendants consistent with the Settlement Agreement provisions concerning coupons after payment to the Claims Administrator for its additional fees and expenses.

## **CONCLUSION**

For the reasons set forth herein, it is respectfully requested that this Court grant the Unopposed Motion to amend the operative portions of the Settlement Agreement by amending the Final Order and Judgment, the Allocation Order and the Distribution Order to eliminate the coupon program and substitute in its place the proposed Rebate Program.

DATED: December 22, 2022

Respectfully submitted,

/s/ *Mark L. Weyman*
Mark L. Weyman
NORRIS McLAUGHLIN, P.A.
7 Times Square, 21st Floor
New York, NY 10036
Tel.: (212) 808-0700
Fax: (212) 808-0844

*Counsel for Defendants Toys "R" Us, Inc., Toys "R" Us-Delaware, Inc. and Babies "R" Us, Inc.*

*On behalf of BabyBjörn AB, Britax Child Safety, Inc., Medela, Inc., Peg Perego U.S.A., Inc. and Regal Lager, Inc.*
